403 Mass. 29                                                29

Post v. Commissioner of the Department of Environmental Quality Engineering.

MALCOLM B. POST, trustee,[1] vs. COMMISSIONER OF THE
DEPARTMENT OF ENVIRONMENTAL QUALITY ENGINEERING
& another.[2]

Norfolk. May 3, 1988. — July 18, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Res Judicata. Estoppel. Department of Environmental Quality Engineering.
Administrative Law, Regulations. Practice, Civil, Summary judgment.*

There was no merit to a plaintiff's claim that, because he obtained a judgment
    on his complaint brought against the Department of Environmental Qual-
    ity Engineering, the issues raised by the department on its counterclaim
    were foreclosed on principles of res judicata, where the plaintiff had
    prevailed on jurisdictional grounds only, and not on any substantive
    point, and where, moreover, the claims asserted in the counterclaim
    presented different issues from that on which the plaintiff prevailed on
    his complaint. [33]
No principles of estoppel were applicable, in the circumstances, to bar the
    Department of Environmental Quality Engineering from challenging the
    validity of a sewage disposal works permit issued by a town's board of
    health for a certain lot on the ground that the department received a
    copy of the sewage disposal plans for the lot and either approved them
    or expressed no interest in passing on them. [34]
On appeal from a judgment in favor of the Department of Environmental
    Quality Engineering on its counterclaim in an action in which the depart-
    ment had obtained a ruling, on its motion for summary judgment, that
    the plans for subsurface sewage disposal systems for a certain con-
    dominium development required the department's approval, which had
    not been obtained, this court vacated the judgment in the department's
    favor and remanded the case for further consideration on a more extensive
    presentation of the material facts. [34-36]

CIVIL ACTION commenced in the Superior Court Department
on September 30, 1986.

---

[1] Of the Mansfield Associates Realty Trust.

[2] Commonwealth of Massachusetts.

Motions for partial summary judgment were heard by *Ernest S. Hayeck,* J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Philipp G. Grefe (Bruce Medoff* with him) for the plaintiff.

*Reed Zars,* Assistant Attorney General, for the defendants.

WILKINS, J. In this action the Department of Environmental Quality Engineering (DEQE) obtained a ruling, on its motion for summary judgment, that the plaintiff trustee needed and did not have DEQE approval of plans for subsurface sewage disposal systems for condominiums on land in Mansfield. We conclude that the judgment in favor of DEQE must be reversed.

At the heart of this case is the requirement of the State Environmental Code (310 Code Mass. Regs. § 15.00ff) that no permit shall "be issued for any system of individual sewage disposal when the total volume of the sewage to be disposed of on any lot is in excess of 15,000 gallons per day . . . until the plans for such system have been approved by the [DEQE] in accordance with G. L. c. 111, § 17." 310 Code Mass. Regs. § 15.02 (1). See 314 Code Mass. Regs. § 5.05 (1). A lot is defined as "[a]n area of land in one ownership, with definite boundaries." 310 Code Mass. Regs. § 15.01. As will be seen, these provisions are not literally applicable to the land involved in this case because two parcels in separate ownership received permits for disposal systems from the local board of health without DEQE involvement where the volume of sewage on each lot was less than 15,000 gallons a day.[3] If, however, as the DEQE argues, the plaintiff's condominium development must be treated as one lot, the daily volume of sewage would exceed 15,000 gallons, and DEQE's approval of the disposal system would be needed.[4]

---

[3] The anticipated daily volume of sewage is determined by multiplying the number of bedrooms by 110 gallons. 310 Code Mass. Regs. § 15.02 (13).

[4] Based on its past action it appears that the DEQE would not approve only a septic system and leaching fields for such a large development but would require a secondary water treatment plant. The disposal systems approved by the Mansfield board of health did not include any secondary water treatment.

We describe the circumstances of the two lots that are involved in this case. On February 16, 1979, Malcolm B. Post as trustee of Alliance Realty Trust (Alliance Realty) acquired three contiguous parcels of land off Erick Road in Mansfield. Of these lots, we are principally concerned with lot 3. In January, 1982, Malcolm B. Post as trustee of Mansfield Associates Realty Trust (Mansfield Associates) acquired from a different seller a lot, abutting lot 3, which in this proceeding has been called lot 4. On April 13, 1983, Mansfield Associates applied to the Mansfield board of health for a sewage disposal works permit for a project on lot 4 that would discharge 11,000 gallons of sewage each day. The permit was issued on May 4, 1983, and condominiums apparently have been built, sold, and occupied on lot 4.

In April, 1984, Mansfield Associates recorded a master deed dedicating lot 4 to condominiums pursuant to G. L. c. 183A (1986 ed.). In that deed Mansfield Associates reserved the right, without the consent of any unit owner, to amend the deed to include subsequent condominium phases including one on lot 3 consisting of not more than sixty-eight units (and others on lots 1 and 2). At this point, as we have indicated, Malcolm B. Post owned both lot 3 and lot 4 but as a trustee of two separate trusts. The record shows that the two trusts have different beneficiaries, but it provides no details concerning the method of operation of the two trusts, their independence or affiliation, or the relationship, if any, of the beneficiaries.

On May 14, 1985, Alliance Realty applied for a sewage disposal works permit for lot 3 for a project that would discharge 11,220 gallons of sewage a day, and the Mansfield board of health issued it on June 19, 1985. There is evidence that the plan may have been sent to the DEQE and approved by it, or at least DEQE disclaimed any interest in it. The application for the permit for lot 3 and accompanying plans did not explicitly refer to lot 4 as being prospectively part of the same condominium development. On the other hand, the application form did not ask for any such information.

On July 31, 1985, Post as trustee of Alliance Realty conveyed lot 3 to himself as trustee of Mansfield Associates. The record does not show that the master condominium deed has been amended to include lot 3 under the master deed or that the conditions permitting such an amendment have been met. In any event, on July 31, 1985, Mansfield Associates owned both lot 3 and lot 4. The DEQE agrees that, if these two abutting lots had been separately owned and in no way affiliated and they had been developed for condominiums just as proposed, DEQE approval would not have been required of either sewage disposal system. Mansfield Associates agrees that, if it had owned both lots when the applications for the permits were sought, DEQE approval of the sewage disposal systems would have been necessary when a permit was sought for lot 3.[5] Mansfield Associates commenced construction on lot 3, but construction has been stopped after the expenditure of substantial amounts of money.

The record does not indicate precisely how the issue before us came to a head. We know that on October 15, 1985, four months after the permit for lot 3 had been issued and over two years after the permit for lot 4 had been issued, DEQE (through its director of the division of water pollution control) issued to local boards of health a letter stating DEQE's position concerning its jurisdiction over condominium developments. That letter stated that, if the total daily gallonage from all phases of a proposed condominium development exceeds 15,000 gallons, the proposal should be forwarded to DEQE for review and will be subject to 314 Code Mass. Regs. § 5.00 concerning minimum acceptable wastewater treatment. The October 15 1985, letter was not an agency regulation. It could not, in any event, retroactively impose any extra burden on Mansfield Associates concerning DEQE approval of sewage disposal systems than the regulations in effect at the relevant times. The DEQE's right to insist on its approval of such plans must

---

[5] Mansfield Associates in effect agrees that a developer cannot evade DEQE approval of its sewage disposal systems by owning separate, abutting lots on each of which less than 15,000 gallons of sewage would be generated in one day.

depend, therefore, on regulations in existence when Mansfield Associates submitted its plans and of which Mansfield Associates was on notice.

Mansfield Associates brought this action on September 30, 1986, to obtain a ruling that the DEQE had no jurisdiction to issue a superseding order following an April 17, 1986, appeal by certain neighbors from an order of conditions concerning lot 3 issued by the Mansfield conservation commission. Mansfield Associates received a favorable ruling below on that issue, and DEQE has not appealed. DEQE had, however, filed a counterclaim alleging, among other things, that Mansfield Associates had violated the Clean Waters Act (G. L. c. 21, § 43 [1986 ed]); the State Environmental Code (see G. L. c. 21A, § 13 [1986 ed.], 310 Code Mass. Regs. §§ 15.00 et seq.); G. L. c. 111, § 17 (1986 ed.); and related regulations by discharging pollutants into groundwaters without a valid permit. It is on these claims that the DEQE received a favorable ruling leading to the entry of the judgment from which Mansfield Associates has appealed.[6] We transferred the appeal here on our own motion.

There is no merit to Mansfield Associates' claim that, because it obtained a judgment on its complaint, the issues DEQE raised in its counterclaim are foreclosed on principles of res judicata. See *Wright Mach. Corp.* v. *Seaman-Andwall Corp.,* 364 Mass. 683, 693-694 (1984). Mansfield Associates prevailed on its complaint on jurisdictional grounds and not on any substantive point. Moreover, the claims asserted in the counterclaim present different issues from the issues on which Mansfield Associates prevailed on its complaint.

---

[6] The judgment, entered on April 3, 1987, enjoined Mansfield Associates from discharging sewage on lots 3 and 4 (and lots 1 and 2) except from occupied units and units that were subject to binding purchase and sale agreements on April 1, 1987, unless a DEQE permit is obtained. The judgment enjoined condominium construction on, and the sale of, lots 3 and 4 (and lots 1 and 2) until DEQE approval is obtained. The judgment also provided that there would be a $1,000 daily fine for any violation of the above orders. It further directed Mansfield Associates to obtain DEQE approval within three years.

There is no merit either in the claim that DEQE is estopped to challenge the validity of the permit issued for lot 3. Mansfield Associates argues that DEQE is estopped because it received a copy of the sewage disposal plans for lot 3 and either approved them or at least expressed no interest in passing on them. There is no showing that DEQE was advised of the relationship of lots 3 and 4. If 310 Code Mass. Regs. § 15.02 (1) required DEQE approval of the disposal system for lot 3, Mansfield Associates could not have proceeded with construction of lot 3 in reasonable reliance on what the DEQE did concerning the plans for lot 3. It is not clear that Mansfield Associates acted in reliance on what the DEQE did as to the lot 3 sewage disposal plans. Thus, even if we would recognize estoppel of an agency of government in such circumstances (*Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Auth.*, 387 Mass. 687, 693-694 [1982]), principles of estoppel have not been shown to be applicable here.

The summary judgment for the DEQE must be reversed. The DEQE has not established that, on the undisputed material facts, it is entitled to judgment in its favor. We do not know enough about the intentions of the developer of lot 4 at the time he obtained a sewage disposal permit for lot 4 to determine whether 310 Code Mass. Regs. § 15.02 (1) required that he obtain DEQE approval of the disposal system for lot 4 as well as that of the board of health. If, at that time, the developer definitely intented to develop lot 3 as part of a condominium project and had common control over both lots, then certainly the regulation required DEQE approval of the sewage disposal system for lot 4 and later for lot 3. We do not read 310 Code Mass. Regs. § 15.02 (1) as imposing a requirement of DEQE approval of the disposal system for lot 4, however, if at the time of the application for a permit for lot 4 the developer either was uncertain as to his future plans for lot 3 or had no control over lot 3 in common with lot 4.[7]

---

[7] Of course, any developer contemplating a phased development that would ultimately generate more than 15,000 gallons of sewage a day would be well advised to obtain DEQE's opinion of the over-all sewage plan from the beginning.

The fact that the master condominium deed for lot 4 held out the possibility of lot 3 (and lots 1 and 2) being added to the condominium project and the fact that Post as trustee owned both lots (but as trustee of separate trusts) suggest but do not establish that the ownership interests of lots 3 and 4 were such that those lots should have been treated from the beginning as one lot for the purposes of 310 Code Mass. Regs. § 15.02 (1). If Post in effect treated the lots as one while he owned both as a trustee of separate trusts, DEQE approval of the sewage disposal system for both lots 3 and 4 was required at least by the time approval was sought of the disposal system to serve lot 3. If, however, Post held the two lots for different beneficiaries and operated the two trusts separately with due regard for the financial interests of those different beneficiaries, the fact that he owned both lots would not warrant treating the lots as one at any time. The consideration Mansfield Associates paid for lot 3 may be instructive in deciding whether, as to the permit for lot 3, lots 3 and 4 should be treated as one for the purposes of 310 Code Mass. Regs. § 15.02 (1).

The case must be remanded for further consideration based on a fuller presentation of the material facts. At that time, if the matter is again presented on summary judgment, defects in the DEQE affidavits, of which Mansfield Associates complains here, can be cured, if necessary.[8] We question whether some and perhaps all the restrictions of the judgment should be applied to lots 1 and 2 which are no longer capable of being covered by the master deed. The point can be analyzed in light

---

[8] Massachusetts R. Civ. P. 56 (e), 365 Mass. 824 (1974), provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." There does not appear, however, to be any dispute about the accuracy of the results of a search of records in the registry of deeds or about the accuracy of a description of public documents in the files of the Mansfield board of health contained in the affidavits. Failures to comply with requirements of rule 56 (e) may prove to be nonprejudicial in particular cases. See C.A. Wright & A.R. Miller, 10A Federal Practice and Procedure § 2738, at 467-469 (1983). Statements of conclusions are not appropriately part of an affidavit from a nonexpert. See *id.* at 486-489. The statements of the health agent for the board of health set forth in paragraph fourteen of his affidavit were conclusions of a nonexpert.

of current facts. We also question the enforceability (and inclusion in the judgment) of a provision that announces in advance the imposition of a $1,000 a day penalty for contemptuous action taken in violation of portions of the judgment. This is not a case in which a coercive conditional fine is imposed to induce compliance with a court order by those acting in contempt of it. See, e.g., *Labor Relations Comm'n* v. *Fall River Educators' Ass'n,* 382 Mass. 465, 476 (1981).

The judgment is vacated, and the case is remanded for further consideration.

*So ordered.*