White, J.
In this action, homeowner Margarita Goodman Sanchez (“Sanchez”) sues mortgage lender Financial Enterprises Corporation (“Financial”) for violations of the Consumer Credit Disclosure Act (G.L.c. 140D) and the Consumer Protection Act (G.L.c. 93A). She also alleges that Financial is liable for the negligent and intentional infliction of emotional distress arising from these violations. She requests that the court rescind a 1989 mortgage transaction between her and Financial, discharge the security interest created by that transaction, and award her damages.
The parties now cross-move for partial summary judgment to obtain a resolution of several legal issues. Specifically, Financial requests partial summary judgment to answer the following questions:
(1)whether Sanchez’s claims for damages arising out of conduct related to the parties’ initial mortgage transaction in 1988 are barred by the statute of limitations:
(2) whether Sanchez’s right to rescind the parties’ second, 1989 transaction, pursuant to G.L.c. 140D, §10(a), is limited by a statutory exception; and
(3) whether Sanchez’s claims for emotional distress are barred by the statute of limitations.
Sanchez cross-moves for summary judgment on the second and third issues.
For the reasons set out below, on the first issue, Financial’s motion for summary judgment is DENIED; on the second issue, Financial’s motion for summary judgment is ALLOWED, and Sanchez’s is DENIED; and on the third issue, Financial’s motion for summary judgment is DENIED, and Sanchez’s is ALLOWED.
In addition, Financial moves to strike the affidavit of Sanchez’s counsel filed in support of Sanchez’s motion for summary judgment and in opposition to Financial’s motion. For the reasons set outbelow, Financial’s motion is ALLOWED in part and DENIED in part.
BACKGROUND
Sanchez resides at 16 Kinnaird Street, Cambridge, Massachusetts, which she has owned and which has been her principal residence since 1973. Financial is a corporation doing business throughout the Commonwealth as a mortgage lender.
Sanchez originally became indebted to Financial on June 20, 1988, when she borrowed $50,000 from Financial at a variable interest rate, secured by a second mortgage on her home. Later, Sanchez fell into arrears on this mortgage to Financial.
On November 21, 1989, Sanchez signed a mortgage and note with another mortgage lender, Homeowners Funding Corporation (“Homeowners”) of Connecticut, as a debt consolidation loan, to pay off her debt to Financial and other creditors.
Later in 1989, Sanchez decided to refinance her 1988 loan from Financial by a different means: another loan from and mortgage to Financial. On December 11,1989, Sanchez signed a new promissory note to Financial with a face value of $63,100.00, with a 15-year term, at an adjustable interest rate, and secured by a new mortgage on her home. On December 14, 1989, Homeowners executed a discharge of Sanchez’s mortgage to it.
Although Sanchez’s December, 1989, loan transaction with Financial (“the 1989 transaction”) discharged Sanchez’s 1988 mortgage to Financial, Financial did not at the time record a discharge of the 1988 mortgage.
Sanchez made payments on the 1989 mortgage. At various points, she fell behind in her payments. In 1993, Financial instituted foreclosure proceedings against her. The parties disagree about whether, at the time of those proceedings, Sanchez had in fact become caught up on her payments.
*422 Sanchez served Financial with a request for rescission and a demand letter under G.L.c. 93A in May, 1993. On December 9, 1993, Sanchez filed the present action, alleging that Financial engaged in unfair lending practices, violated G.L.c. 93A, and caused her emotional distress. She seeks damages and rescission of the 1989 mortgage.
Both parties have now cross-moved for partial summary judgment on three issues; additionally, Financial has moved to strike Sanchez’s counsel’s affidavit.
DISCUSSION
I. Defendant’s motion to strike the affidavit of plaintiffs counsel is ALLOWED in part and DENIED in part.
Financial moves on a number of grounds to strike the affidavit of Sanchez’s counsel, Carol Wagner (“Wagner”), filed in support of Sanchez’s motion for summary judgment and in opposition to Financial’s motion. I disagree with the majority of the arguments Financial makes in support of this motion. Nevertheless, because I do find that one paragraph of Wagner’s affidavit should be stricken, Financial’s motion is ALLOWED in part and DENIED in part.
A. Paragraphs 3 and 4 of Wagner’s affidavit are based on Wagner’s personal knowledge; paragraph 5 is based only in part on her personal knowledge and is stricken to the extent that it is not.
Financial argues that paragraphs 3, 4, and 5 of Wagner’s affidavit must be stricken because they are not based on Wagner’s personal knowledge. I decline to strike paragraphs 3 or 4, but I do strike so much of paragraph 5 as contains counsel’s own conclusions from the contents of the documents she attaches as exhibits.
In paragraph 3, Wagner attests to her own communication with Financial and to Financial’s response; I find that these are clearly matters within her personal knowledge.
In paragraph 4, Wagner asserts that certain exhibits to her affidavit are “documents from” the defendant. Wagner’s affidavit would ideally have been more explicit as to the source of her knowledge that this was the case.[1] However, in her opposition to Financial’s motion to strike, Wagner does state that these documents were received in discovery or otherwise submitted to plaintiff during the course of this litigation. As such, I find that Wagner has personal knowledge of the fact to which she attests in paragraph 4: that the attached documents are “from” the defendant.
Furthermore, I find that I may appropriately consider the documents attached as exhibits pursuant to paragraph 4 as part of the summary judgment record. It is true that Rule 56(c) includes responses to interrogatories, but not responses to requests for document production, among the list of summary judgment materials that the court may consider. However, in light of Massachusetts’ traditionally liberal view of the content of a summary judgment record,[2] and in light of the fact that Financial has not challenged the accuracy of any of these documents,[3] I find that I may appropriately consider them in deciding the present cross-motions for summary judgment.
I therefore decline to strike paragraph 4.
In paragraph 5, Wagner asserts that certain exhibits are:
documents evidencing Defendant’s demands for payment and collection actions, Plaintiffs payments in February 1993, and Defendant’s foreclosure actions.
This assertion may be read to draw a conclusion as to what happened between Financial and Sanchez in 1992 and 1993: this is a matter that is arguably not within Wagner’s personal knowledge. Thus, I strike so much of paragraph 5 as can be read to draw conclusions beyond Wagner’s personal knowledge. In my consideration of the cross-motions for summary judgment, I ignore any such conclusions that paragraph 5 draws. However, I decline to strike so much of paragraph 5 as can be read as merely informing the court that the attached exhibits were received from Financial during discovery. Moreover, for the reasons discussed above, I find that the documents attached pursuant to paragraph 5 may appropriately be considered part of the summary judgment record, although I draw my own inferences from their contents.
B. Plaintiffs counsel’s affidavit does not violate ethical rules prohibiting an attorney from testifying on her client’s behalf.
Financial also argues that Wagner’s affidavit violates ethical rules prohibiting an attorney from acting as a witnesses for her own client. I disagree. In fact, the Canons of Ethics and Disciplinary Rules do permit an attorney to testify on her client’s behalf if:
the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony. Supreme Judicial Court Rule 3:07, DR 5-101(B)(2).
This is the case here, where Wagner’s affidavit serves to attest to the authenticity of certain public records; certain documents prepared by Financial, including documents sent by Financial to Sanchez; a letter sent to Financial by Wagner herself; and affidavits submitted by Financial pursuant to its own motion for summary judgment. The authenticity of these documents is certainly a “matter of formality,” and, more importantly, is not contested by Financial. Nor has Financial given me any reason to think that it will later offer evidence contesting their authenticity: it has to date given no indication that authenticity will be relevant to its defense.
Wagner’s affidavit also attests, in paragraph 3, to the fact that she asked Financial to discharge its 1988 *423 mortgage against Sanchez’s property, and that Financial did so only after she made that request. While this statement comes closer to being more than a “matter of formality,” I find that it should not be stricken as a violation of the Canons or Disciplinary Rules. Financial has not contested Wagner’s statement and has given no indication that it intends to do so at trial. Therefore, I decline to strike Wagner’s statement.
C. All exhibits attached pursuant to paragraphs 4 and 5 of Wagner’s affidavit are admissible as exceptions to the rule against hearsay: therefore, I decline to strike them.
Finally, Financial contends that the exhibits attached to paragraphs 4 and 5 of Wagner’s affidavit are inadmissible as hearsay. I disagree.
All of the exhibits except Exhibit 3D are admissible as “statements of a party-opponent,” under the well-established exception to the hearsay rule. See, e.g., Commonwealth v. Pero, 402 Mass. 476 (1988), cited in Paul J Liacos, Handbook of Massachusetts Evidence §8.8.1 (6th ed. 1994).
Exhibit 3D, the Land Court’s Memorandum and Order of Notice of Financial’s complaint to foreclose, is admissible under the rule that the court may take judicial notice of court documents filed in related proceedings. See, e.g., Brookline v. Goldstein, 388 Mass. 443, 447 n.5 (1983), cited in Liacos, Evidence §2.8.1. I therefore take judicial notice of Exhibit 3D and decline to strike it.
II. The parties cross motions for summary judgment
A.Issues to be resolved on summary judgment
As noted above, the parties have requested that three issues be resolved on summary judgment:
(1) whether Sanchez’s claims for damages arising out of conduct related to the parties’ initial mortgage transaction in 1988 are barred by the statute of limitations:
(2) whether Sanchez’s claim for rescission of the parties’ second, 1989 transaction, is limited by a statutory exception: and
(3) whether her claims for emotional distress are barred by the statute of limitations.
As to the first issue, Financial’s motion for summary judgment is DENIED: as to the second issue, Financial’s motion is ALLOWED and Sanchez’s DENIED; as to the third issue, Financial's motion is DENIED and Sanchez’s ALLOWED.
B.Standard for granting summary judgment
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ. p. 56(c), 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Establishing the absence of a triable issue requires the nonnoving party to respond by alleging specific facts demonstrating the existence of a genuine issue of material fact. Pederson v. Time, Inc., supra at 17.
C.To the extent that the complaint raises claims concerning the first (1988) mortgage, those claims are not necessarily barred by the statute of limitations. Financial’s motion summary judgment on that issue is therefore DENIED.
It is not clear from the pleadings what claims, if any, Sanchez wishes to raise concerning the 1988 mortgage transaction. I DENY Financial’s motion for summary judgment on this issue, because I find that at this point in the litigation, Financial is not entitled to an unconditional determination that Sanchez’s claims are barred.
For the purposes of narrowing the issues for future determination, I draw the following legal conclusions about Sanchez’s potential claims in connection with the 1988 mortgage transaction.
First, if Sanchez wishes to raise G.L.c. 140D claims for failure to disclose, I find that these are barred by the four-year statute of limitations set out at G.L.c. 260, §5A. In this respect, I follow the reasoning of Butler, J., set out in Khan v. Dime Savings Bank of New York, Civil No. 93-1345, 1 Mass. L. Rptr. No. 16, 339, 1993 WL 88711 (Superior Court Nov. 15, 1993).[4]
Second, if Sanchez wishes to raise claims for emotional distress arising from the 1988 transaction, it is not clear whether these would be timely. This would depend upon: (1) the date of the first instance of emotional distress attributable to the 1988 transaction, and whether that was within the three-year statute of limitations period mandated by G.L.c. 260, §2A (this is unlikely, as that statutory period began in 1990, after the 1989 transaction); and (2) a more detailed description of the episodes of distress attributable to the 1989 transaction.[5] Thus, in order for the court to make a decision as to the timeliness of emotional distress claims stemming from the 1988 *424 transaction, Sanchez would be required to present more information.
Third, as to potential 93A claims, these are also limited by the four-year statute of limitations period set out in G.L.c . 260, §5A. However, in order for the court to determine whether these claims were timely, Sanchez would need to submit further information about her injuries and when she discovered them. In light of such additional evidence, the court could determine whether the statute of limitations was tolled during the period, for example, before Sanchez discovered those injuries. See International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass.App.Ct. 215 (1990) (discovery rule applies to the accrual of c. 93A claims).
In conclusion, Financial’s motion for summary judgment on the issue of the timeliness of Sanchez’s potential 1988 claims is DENIED.
D. Sanchez’s right to rescind the 1989 transaction is limited by the exemption set out in G.L.c. 140D, §10(e)(l)(B). Therefore, summary judgment is ALLOWED for Financial and DENIED for Sanchez on that issue.
Both G.L.c. 140D, §10(a), and the regulation enacted pursuant to it, 209 Code Mass. Regs. §32.23, give a consumer a “right of rescission” in a credit transaction in which a creditor takes a security interest in the consumer’s principal dwelling. However, the right of rescission does not apply to certain credit transactions that constitute “refinancings,” by the same creditor, of an earlier loan. G.L.c. 140D, § 10(e)(1)(B); 209 Code Mass. Regs. §32.23(0(2). Here, the point in contention is whether this exception to the right of rescission applies to the 1989 mortgage transaction, and, if it does, whether it applies to the entire transaction or only to a portion of it. Sanchez holds that the right of rescission applies to the entire transaction; Financial holds that if it applies at all, it applies only to those funds advanced to Sanchez under the 1989 transaction that were in excess of the unpaid balance and charges from the 1988 transaction. I agree with Financial: therefore, on this issue, Financial’s motion for summary judgment is ALLOWED, and Sanchez’s is DENIED.
Financial is correct that the 1989 loan from Financial was a “refinancing by the same creditor” for purposes of establishing an exception to the right of rescission.[6] I next turn to the question of whether Sanchez’s right of rescission applies to the entire transaction, or only to that portion of it which advanced money to Sanchez in excess of in excess of the unpaid balance and finance charges on the 1988 loan.
Sanchez argues that the entire 1989 transaction is subject to the right of rescission set out in G.L.c. 140D, §10(a). In support of her argument, she points to the language of G.L.c. 140D, §10(e)(l), which lists a number of transactions to which the right of rescission does not apply. Specifically, § 10(e)(1) provides that the right does not apply to a “refinancing by the same creditor,” in which no new funds were advanced[7] On Sanchez’s reading, §10(e)(l)’s list of transactions that are exempt from the right of rescission is exhaustive: i.e., she asserts that only those transactions that are listed are exempt. Thus, she argues that the 1989 transaction, in which new funds were advanced, is not exempt (even in part), because it does not appear in §10(e)(l)’s list. Sanchez claims, then, that§10(a) gives her the right to rescind the entire 1989 transaction.
Financial, in contrast, directs the court’s attention to the regulation implementing that statute, 209 Code Mass. Regs., §32.23(f). That regulation provides:
The right of rescission does not apply to .. . [a] refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer’s principal dwelling. If the new amount financed exceeds the unpaid principal balance plus any earned unpaid finance charge on the existing debt, this exemption [from the right to rescind] applies only to the existing debt and its security interest 209 Code Mass. Regs. §32(f) (emphasis supplied). In other words, the regulation includes refinancings in which new funds were advanced among those transactions exempt (at least in part) from the consumer’s right of rescission. On Sanchez’s reading of G.L.c. 140D, §10(e)(l), this regulation conflicts with its enabling statute and is possibly invalid.[8]
I decline to adopt Sanchez’s interpretation of G.L.c. 140D, §10(e)(l). Rather, I find that §10(e)(l) need not be read as an exhaustive list of exempt transactions, and that regulations enacted pursuant to §10(e)(l) may include other exemptions. As Financial suggests, the Legislature seems to have anticipated that the Commissioner of Banks might issue regulations that exempted transactions beyond those listed in c. 140D from the protections of that statute. Chapter 140D, section 3(a), provides:
The commissioner shall prescribe from time to time such rules and regulations as may be necessary or proper in carrying out the provisions of this chapter. Such rules and regulations may .. . provide for such . . . exceptions for any class of transactions, as in the judgement of the commissioner are necessary or proper to carry out the purposes of this chapter . . . provided, however, that no such rule or regulation shall contain any classification, differentiation or other provision with respect to, or provide for any judgement or exception for, any class of transaction which would result in less stringent disclosure requirements than afforded that class of transaction under the Federal Consumer Protection Act and Regulation Z issued by the board.
Because the exemption contained in 209 Code Mass. Regs. §32(f) for portions of refinancings that include new advances does not result in “less stringent disclosure requirements,” I find that it is a valid exemption added by the commissioner. Thus, I find that the *425 regulation does not conflict with the statute and should be read as the Commissioner of Bank’s valid interpretation of the statute. Sanchez’s right of rescission under G.L.c. 140D, §10(a), is therefore limited to that portion of the 1989 transaction that advanced her funds in excess of the unpaid principal balance and earned unpaid finance charges from the 1988 transaction.[9]
E. The statute of limitations does not bar plaintiffs claim for emotional distress: thus, on that issue, summary judgment is DENIED for Financial and ALLOWED for Sanchez.
Finally, I find that Sanchez’ claims for negligent and intentional infliction of emotional distress are not barred by the statute of limitations.
Again, G.L.c. 260, §2A, mandates that a plaintiff bring a tort claim within three years of its accrual. Here, the earliest instance of emotional distress that Sanchez describes occurred in December, 1992, when she asserts that she experienced nightmares and cried frequently because of Financial’s debt collection efforts. Thus, I conclude that her cause of action for emotional distress accrued in December 1992, at the earliest — well within the three-year period before the filing of this complaint in December 1993.[10] On this issue, then, summary judgment is a ALLOWED for Sanchez and DENIED for Financial.
ORDER
For the reasons set out below, the following orders are to issue:
1. Financial’s motion to strike the affidavit of plaintiffs counsel is ALLOWED in part and DENIED in part, as described in this opinion.
2. To the extent that Sanchez’ complaint can be read to include claims stemming from the 1988 mortgage transaction, some but not all of those claims may be barred by statutes of limitations. Therefore, on this issue, Financial’s motion for summary judgment is DENIED.
3. To the extent that Sanchez establishes later in this case that she may be entitled to rescind the 1989 mortgage transaction under G.L.c. 140D, § 10(a), this right of rescission applies only to that portion of the transaction, pursuant to which Financial advanced her funds in excess of the unpaid principal balance plus any earned unpaid finance charge on the 1988 loan. Therefore, on this issue, Financial’s motion for summary judgment is ALLOWED, and Sanchez’s is DENIED.
4. Sanchez’s claims for emotional distress, insofar as the earliest instance of emotional distress occurred in December of 1992, are not time-barred. Therefore, on this issue, Financial’s motion for summary judgment is DENIED, and Sanchez’s is ALLOWED.

For example, the affidavit might have stated: ‘The documents attached as exhibits 2A-2F were received by plaintiff from defendant as responses to requests for production of documents.”

See, e.g., Correllas v. Viveiros, 410 Mass. 314, 317-18 (1991) (collecting cases).

See, e.g., Post v. Commissioner of the Department of Environmental Quality Engineering, 403 Mass. 29 (1988). In that case, in which a party may have failed to comply with Rule 56(e)’s requirement that certified or sworn copies of documents referred to in an affidavit be attached to or served with that affidavit, the court implied that this failure might not be important:
There does not appear, however, to be any dispute about the accuracy of the results of a search of records in the registry of deeds or about the accuracy of a description of public documents in the files of the . . . board of health contained in the affidavits. Failures to comply with requirements of rule 56(e) may prove to be nonprejudicial in particular cases. Post, 403 Mass. at 35, n. 8.

In that case, Judge Butler concluded that the four-year statute could not be extended on a “continuing tort" theory:
[T)he Massachusetts Truth-in-Lending Act is closely modeled on the Federal Truth-in Lending Act .... Where a state statute is drafted to parallel a federal statute, it should be construed in accordance with federal law. Vasys v. Metropolitan District Commission, 387 Mass. 51, 54 (1982). Nondisclosure in the context of the federal Truth-in-Lending Act has been interpreted by the federal courts as not constituting a continuing violation for purposes of the statute of limitations. In re Smith, 737 F.2d 1549 1552 (11th Cir. 1984), citing Wachetel v. West, 476 F.2d 1062 (6th Cir. 1973), cert. denied, 414 U.S. 874 (1973). Khan, 1993 WL at *2.
Judge Butler also rejected the argument that the statute should be tolled (on a theory of “fraudulent concealment”) until plaintiffs discovered the nondisclosure. Khan at *2, citing Lynch v. Signal Finance Co. of Quincy, 367 Mass. 503, 507 (1975).
Finally, Judge Butler’s opinion impliedly rejects the argument that the discovery rule should have tolled the statute until the plaintiffs actually discovered their injuries. Rather, she wrote that the plaintiffs “needed only to inquire into what should have been disclosed to them by [the defendant). [The plaintiffs] had in their possession the relevant documents. Their own failure to make an inquiry concerning their rights will not toll the statute of limitations.” Khan at *2.

That is, depending on the nature of Sanchez’s emotional distress, it is possible that she could succeed in arguing, under a continuing tort theory, that the statute of limitations should be tolled. On the doctrine of continuing tort, see, e.g., Carpenter v. Texaco, Inc., 419 Mass. 581, 583 (1995) (where an nuisance involved “repeated or recurrent wrongs involving new harm ... on each occasion,” plaintiff could bring an action for the nuisance, even if it began before the statute of limitations period). To date, Massachusetts appellate courts have neither accepted nor rejected the application of the continuing tort doctrine to emotional distress claims.

Sanchez argues, in contrast, that the 1989 loan from Financial should not be considered a “refinancing by this same creditor.” She asserts that she obtained a loan from another source (Homeowners Funding Corporation) in November 1989, before obtaining the December, 1989, Financial loan. It is this intervening loan, she argues, that was intended to “refinance” her outstanding debt to Financial. The December 1989, loan from Financial, then, should be considered a refinancing of this intervening debt, from a different creditor, rather than a refinancing of the 1988 loan “by the same creditor” (Financial).
I disagree. The evidence before me indicates that although Sanchez may have intended, at one point, that a loan from *426 Homeowners Funding Corporation in November of 1989 would pay off her existing 1988 debt to Financial, this did not in fact happen. Although it is not clear what ultimately did happen between Sanchez and Homeowners, the evidence indicates that Sanchez made a decision (perhaps with encouragement from Financial) to refinance her 1988 debt by means of the December 1989, mortgage transaction with Financial, rather than by means of proceeds from the November 1989, transaction with Homeowners. See, e.g., Affidavit of Plaintiff Margarita Goodman Sanchez in Opposition to Defendant's Motion for Partial Summary Judgment and in Support of Plaintiffs Cross-Motion for Partial Summary Judgment, para. 8:
A week or two after I signed all the papers with Homeowners, Financial Enterprises Corporation called me. They asked me why I had left them, and I said I needed money to pay bills. They said that they had been talking with the people at Homeowners and that they did not want to lose me as a customer, that they would give me a “better deal" than I had with Homeowners, and that they could arrange it so I could get some cash from borrowing from them So I called Homeowners and told them that I would go back to Financial Enterprises because they were going to give me a new loan for a better deal than from Homeowners.
In sum, then, I find that the 1989 loan from Financial was a “refinancing [of the 1988 loan] by the same creditor,” for purposes of establishing an exception to the right of rescission.

Section 10(e)(1)(B) provides that:
[t]his section [providing for a consumer’s right to recind] shall not apply to ... a transaction which constitutes a refinancing or consolidation, with no new advances, of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property. G.L.c. 140D, §10(e)(l)(B) (emphasis supplied).

There is a similar apparent conflict between the near-identical provision of the federal Truth in Lending Act (15 U.S.C. §1635(e)(2)) andits implementing regulation (12 C.F.R. §226.23(f)).

I note, however, that although Sanchez may not be entitled to rescission of the entire 1989 transaction under G.L.c. 140D, §10(a), she may nevertheless be entitled to rescind the entire transaction for a different reason: namely, for Financial's failure to disclose accurately to her the scope ofher rescission rights. Chapter 140D, section 10(a), provides that:
The creditor shall clearly and conspicuously disclose, in accordance with regulations of the commissioner, to any obligor in a transaction subject to this section the rights of the obligor under this section.
Because Financial concededly gave Sanchez a disclosure form that described her rescission rights under a non-exempt transaction, rather than the form more appropriate to a refinancing, it appears that Financial violated this provision. Rescission of the transaction is a remedy for this violation:
In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section thirly-two not relating to the right to rescind. G.L.c. 140D, §10(g) (emphasis supplied).
I do not decide now whether rescission is the appropriate remedy for Financial’s apparent violation, as the parties have not expressly briefed the ramifications of § 10(g).
As a final note, I agree with Financial that Sanchez has not adequately plead an estoppel theory, on the basis of which Financial would be bound by its misleading disclosure form (specifically, Sanchez has not indicated that she relied on the form). Rather, Sanchez would be more likely to obtain rescission as a statutoiy remedy under § 10(g), as described in this footnote.

If Sanchez wished to amend her complaint to include emotional distress suffered prior to December 1990 (at which point the statute of limitations began to run), this might be a different question. The court would be required to make further inquiry into whether Sanchez’s emotional distress claim involved “repeated or recurrent wrongs involving new harm ... on each occasion,” so that Sanchez might be permitted to bring an action more than three years from the first occurrence. On the doctrine of continuing tort, see, e.g., Carpenter, 419 Mass. at 583, and footnote 5, supra.